Smith, J.
The action below was one brought by the Village of Bond Hill to determine the amount of damages (if any) which Mr. Martin should recover, resulting from the improvement by the village, of what was originally known as the “ Paddock Road,” but which is now within the village, and is one of the streets thereof, and is called Carthage avenue, the width of which is sixty feet. Years ago, before the village was organized or the road embraced within its limits, the evidence shpws that it had been partially improved, under a special statute, by the county commissioners, who established a grade therefor. The center of the roadway to the width of perhaps *272 twenty-four feet was graded and graveled, and on the west side thereof a ditch was cut, which operated, (assisted by pipes laid thereto), to carry off the water which fell on the land lying to the west of the road, much of which naturally flowed eastward to and over the road, but the ditch caught and carried it to a culvert built under the road by the commissioners, and by this means the water was taken under the road, and escaped to the eastward. The land of Mr. Martin lies on the west side of the road (the center of Carthage avenue being his east line), and extends north 800 feet on the road. His south line was the'B. & O. Railroad, the embankment oí which prevented the water which fell on his land from passing to the south. Indeed, the natural drainage of the greater part of the tract (-which contained about twenty-three acres), or much of it at least, was to the east.
The proof in. the case was clear, that if the roadway east of Martin’s property was filled up on the west side to a depth of two or three feet in the vicinity of this culvert, as was contemplated by the plans and specifications adopted by the council for the improvement, unless the culvert was extended to the west side of the street, the necessary consequence would be that the ditch made by the commissioners, thus being filled up, and the mouth of the culvert being also obstructed, a considerable part of Martin’s land, in his southeast corner, would be overflowed by the water thus prevented from escaping by the culvert, and thus be greatly depreciated in value. We think that it is apparent from an examination of the plans and specifications for this improvement, that this extension of the culvert was not provided for, nor was any other provision made for the escape of the water from this part of the land.
The jury having returned a verdict in favor of the village finding that Martin would sustain no damage, a motion for a new trial was made on the ground that the verdict was against the evidence, and for other grounds ; but the court overruled the motion, which action was excepted to, and a bill of excep *273 tions allowed containing all the evidence, the charge of the •court, with exceptions taken to the rulings as to the admission of the evidence.
One of the principal objections to the rulings of the trial judge (frequently made) was as to evidence offered by the village for .the purpose and with the object of showing, that instead of this improvement causing damage to the land of Martin, that it would greatly enhance its value, not by any special benefit to this particular tract, but as a general result of the improvement. For instance, on page 82 of the bill of exceptions, it is shown that Mr. Harrison, a witness for the village, was allowed, over the objection and exception of the counsel for Martin, to testify that the value of the land as it then stood, without the improvement, was $15 or $20 per front foot, and that the fair and reasonable value of it, after the improvement was completed as contemplated by the plans and specifications, would be $25 per front foot; and Mr. Murphy, on pages 94-6, and post, was allowed to testify to the present value of the property as being $12.50 to $15 per front foot, and when completed according to the specifications, that it would be worth $5 per front foot more. In these questions and answers no attempt was made to confine their estimate of the increase in the value of the land after the improvement was made to an increase that would result from any special benefit that would come to the land of Martin, different from that which might result to the adjacent property, from having a good road.
Some time after this testimony was given, while a Mr. Woodward was being examined as a witness for the village on the same point, he testified that the present value of Martin’s property was from $12 to $14 per front foot, and he was then inquired of by plaintiff’s counsel as to what its fair value would be after the improvement was made under the plan proposed. This questiou was objected to, and the objection was overruled, but before the witness answered it the court said : “ Just as it stands there, without any reference to any general *274 increase by reason of the improvement that is made, excluding any benefit or improvement derived from the general improvement of the road ?” And the witness then answered, “ $18 or $20, I should say, after that improvement is made.”
This was the first time, as it appears, that there was any suggestion whatever by the court that general benefits, which would result to the property in the vicinity, were not to be included in the estimate of the value of the property as it would be when the improvement was completed ; and though occasionally thereafter a like suggestion was made to witnesses on this point, and a like statement was made in the charge to the jury, it was first clearly or explicitly done, and the evidence of the first two witnesses named, evidently given on a different theory, was not withdrawn from the jury, but allowed to stand over the objections taken thereto by the defendant. Indeed, we think it manifest from the bill of exceptions, that the testimony of all of the witnesses for the plaintiff as to the value of the land, after the improvement was completed, was on the theory that a good road like that contemplated would enhance Martinis land in common with other laud in the vicinity, for none of them claim or suggest any special benefit, peliar to it alone, which would go to enhance its value.
We think that the rule on this point, in a case of this kind, may be properly stated thus : • that the measure of the damages to the owner of the land (if any) will be the difference and diminution in the value thereof, between what it is fairly worth in the condition in which it is, and its fair value as it will be when the improvement is made as contemplated; and when such diminution (if any) is brought about by causes not common to other lands or lots in the vicinity, and in estimating the value of the lands as they will be when the improvement is made, the general increase in the value of lands in the neighboahood caused by the the improvement should not be taken into the account. "We think the. evidence was not given in view of any such rule, and that the *275 defendant was prejudiced by the action of the court in allowing it to be given.
Objection was also taken to evidence of a different character. As has been stated, it appears that the plans and specifications adopted by the village made no provision for the extension of the culvert under the road (constructed by the county commissioners), out to the west line of the street, a distance of about eight feet; but on the contrary, if the'plan was carried out, the street would be filled up to the west line thereof, and thus- obstruct the mouth of the culvert, and prevent the flow of water from Martin’s land through the same. Yet the village was allowed to prove, over the objection of the defendant, by different members of the village council, that while the plans and specifications adopted by the village did not seem to call for the extension of the culvert, • and did call for the filling up of the street, that such was not the purpose, and if it became necessary to do so, the village would extend the culvert and take other proper means to prevent Martin’s land from being flooded. This evidence, we think, was incompetent. The council of the village, by resolution and ordinance, had settled the plan on which the improvement was to be made; a jury was in the box to decide as to the amount of damages the defendant would suffer if the improvement was made on this plan. The members of the council, or the mayor, as individuals, had no power to bind the village to make a different improvement from that ordered, and the question of damage was to be settled in the light of this plan and specifications; and the jury had no right to hear any promise to do otherwise, or decide the question on such promise. It is possible that if at the trial it appeared that there was a defect in the plan, and which it was desired to remedy, and there was action of the council.warranting it, a proper pleading might, on fair terms, be allowed to be filed, by which the village would undertake to bind itself to extend the -culvert, or take other steps to carry off the water, and which could then be *276 made binding by a judgment of the court. But nothing of this kind was done, but the evidence named went to the jury, which doubtless put confidence in these unauthorized statements of witnesses that those additional improvements would be made, and thus prevent the flooding of Martin’s land, and that for this reason they allowed him no damages. For these reasons the judgment will be reversed and a new trial awarded.
J. G. Harper and Joseph Wilby, for Martin.
G. H. Jones and Healy & Brannan, contra.